**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT BURKE and MARK RILEY,** | : | |
| **individually and on behalf of all others** | : | **CIVIL ACTION** |
| **similarly situated,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HONEYWELL** | : | |
| **INTERNATIONAL, INC.,** | : | **No. 15-1921** |
| **Defendant.** | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                                                           **April 26, 2016**

In this putative class action, Robert Burke and Mark Riley bring a number of claims against

Honeywell International, Inc. ("Honeywell") for allegedly designing, marketing, and selling defective

humidifiers. Honeywell asserts that these claims must be dismissed as nothing but hot air. The Court

does not agree. At this stage of the proceedings, Plaintiffs have raised plausible claims that lead this

Court to deny Honeywell's motion to dismiss in its entirety.

## I.      BACKGROUND

### A.      Universal Claims

Honeywell has sold TrueSTEAM humidifiers throughout the United States. (Am. Class

Action Compl. ¶¶ 1-2.) Honeywell marketed the humidifiers as reliable, easy to maintain, and eco-

friendly, and stated that the humidifiers provided the "cleanest form of humidification." (*Id*. ¶¶ 14-

17.) Although Honeywell disseminated sales brochures and marketing literature touting the high

performance and efficiency of the humidifiers, Plaintiffs allege that "Honeywell Humidifiers are

unreliable, difficult to maintain, and wholly defective. The humidifiers' interior components become

caked with mineral deposits and scaling, often shortly after installation and only minimal use. This mineral buildup may lead to overheating, cracking of various components, and blockages, which can cause scalding water to overflow into the adjoining structure and personal property." (*Id*. ¶¶ 4-7; *see also id*. ¶¶ 22-26.) Homeowners have been forced to repair or replace the defective humidifiers, and they have also been forced to incur costs as a result of the defective products. (*Id*. ¶¶ 8-9; 30-31.)

Honeywell warranted that the TrueSTEAM humidifiers would "be free from defects in the workmanship or materials, under normal use and service, for a period of five (5) years from the date of purchase by the consumer. If at any time during the warranty period the product is determined to be defective or malfunctions, Honeywell shall repair or replace it (at Honeywell's option)." (Am. Class Action Compl. Ex. A [Warranty].) The warranty instructed that "[i]f the product is defective," the consumer should return it to the place of purchase or call Honeywell Customer Care who would "make the determination whether the product should be returned to [Honeywell], or whether a replacement product can be sent to you." (*Id*.) The warranty "does not cover removal or reinstallation costs. This warranty shall not apply if it is shown by Honeywell that the defect or malfunction was caused by damage which occurred while the product was in the possession of a consumer." (*Id*.) The warranty continued:

> Honeywell's sole responsibility shall be to repair or replace the product within the terms stated above. HONEYWELL SHALL NOT BE LIABLE FOR ANY LOSS OR DAMAGE OF ANY KIND, INCLUDING ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING, DIRECTLY OR INDIRECTLY, FROM ANY BREACH OF ANY WARRANTY, EXPRESS OR IMPLIED, OR ANY OTHER FAILURE OF THIS PRODUCT. Some states do not allow the exclusion or limitation of incidental or consequential damages, so this limitation may not apply to you.

(*Id*.) The warranty concluded:

THIS WARRANTY IS THE ONLY EXPRESS WARRANTY HONEYWELL MAKES ON THIS PRODUCT. THE DURATION OF ANY IMPLIED WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, IS HEREBY LIMITED TO THE FIVE-YEAR DURATION OF THIS WARRANTY. Some states do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply to you.

(*Id*.)

According to Plaintiffs, Honeywell is aware of the problems with its humidifiers, but uses an "overly burdensome warranty claims process that is designed to, and does, deter customers from making claims under their warranties." (Am. Class Action Compl. ¶ 40.) Honeywell's remedy to repair fails of its essential purpose because Honeywell simply replaces defective humidifiers with "the same defectively designed Humidifiers that are prone to the problems complained of by Plaintiffs and members of the Classes." (*Id*. ¶ 48.) Moreover, Honeywell knew, or should have known that its humidifiers included defective heating coils. (*Id*. ¶ 50.) Plaintiffs also claim that Honeywell failed to test the units adequately prior to selling them. (*Id*. ¶¶ 52-54.) Plaintiffs never would have bought and installed the humidifiers had Honeywell not withheld important information about the design, reliance, and performance of the units. (*Id*. ¶ 62.)

### B.    Individual Tales of Installation

On October 23, 2012, Burke bought a Model-HM506A1000 Honeywell TrueSteam 6-gallon humidifier from a Philadelphia HVAC dealer/installer that was recommended by Honeywell. (*Id*. ¶ 71.) The total cost of the humidifier and installation was $1,015. (*Id*.) Burke selected the Honeywell humidifier because of the warranty and Honeywell's representations about its quality and reliability. (*Id*. ¶ 73.) The humidifier was kept under normal use and service, as Honeywell directed. (*Id*. ¶ 75.) Nonetheless, in February of 2015, the device indicated that the heating element needed

to be replaced. (*Id*. ¶ 76.) The humidifier had mold on its internal parts. (*Id*. ¶ 77.) When Burke called Honeywell to report the failure, Honeywell told him that it would not fix the unit unless an authorized technician first inspected the unit, and Honeywell referred Burke to the technician who installed the unit. (*Id*. ¶ 79.) That technician examined the unit and determined that the heating element had failed. (*Id*.) This visit cost Burke $85. (*Id*.) The technician has informed Burke that Honeywell will provide a new unit, but all costs for installing the new unit must be borne by Burke. (*Id*. ¶ 80.)

On November 4, 2013, Riley bought a Model HM512 Honeywell TrueSTEAM 12-gallon Humidifier with H8908 manual humidity control from an online retailer for $483.95. (*Id*. ¶ 83.) Riley chose the humidifier because of the warranty and Honeywell's representations about its quality and reliability. (*Id*. ¶ 85.) Riley installed the unit in the basement of his home, where he has kept it under normal use and service, as directed by Honeywell. (*Id*. ¶¶ 88-89). In the spring of 2014, Riley noticed substantial mineral deposits on the interior parts of the unit. (*Id*. ¶ 90.) Later that year and into 2015, the unit regularly began overheating and shutting off. (*Id*. ¶ 91.) The unit is currently inoperable, and the service light indicates that either the water sensor has failed or the entire unit must be replaced. (*Id*. ¶ 92.) On February 2, 2015, Riley notified Honeywell about his defective unit, but Honeywell told him on two separate occasions that it would not honor the replacement warranty unless a contractor inspected and installed the replacement unit. (*Id*. ¶¶ 94-95.) Riley has contacted a number of contractors, but Riley has yet to find a contractor willing to install a replacement unit for less money than the cost of the original unit. (*Id*. ¶ 96.)

### C.    Legal Claims

This litigation was brought as a class action on behalf of "all individuals and entities that

have owned, own, or acquired homes, residences, buildings or other structures physically located in the United States, in which an HM506, HM509, and/or HM512 Honeywell TrueSTEAM Humidifier is or has been installed since 2008." (*Id*. ¶ 105.) In addition to the nationwide class, Burke seeks to represent a Pennsylvania subclass, and Riley seeks to represent a New Jersey subclass. (*Id*. ¶¶ 106-07.)

Count I is a claim against Honeywell for breach of the express warranty included with the humidifier. Specifically, Honeywell expressly warranted that the humidifiers would remain free of defects for five years after the date of purchase. That proved to be false. (*See id*. ¶ 128 ("[T]he humidifiers are inherently defective and fail shortly after installation and before the five year warranted life for the product.").) The class also alleges that the limited warranty fails of its essential purpose because Honeywell is replacing defective units with other defective units. (*Id*. ¶ 129.) The warranty is also "woefully inadequate" because it is limited to replacement of the humidifier and does not include labor to replace the defective unit. (*Id*. ¶ 134.) Count II is a claim for breach of the implied warranty of merchantability. (*Id*. ¶¶ 141, 144-46.) Plaintiffs claim that any disclaimer or limitation of the implied warranties was unconscionable and unenforceable because Honeywell knew that the humidifiers were defective. (*Id*. ¶ 147.) Count III is a claim for breach of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and Count IV is a claim for breach of the New Jersey Consumer Fraud Act ("CFA"). Count V is a negligence claim for designing, manufacturing, advertising, and selling a defective product, and failing to promptly remove the defective products from the market. (*Id*. ¶¶ 200-05.) Count VI is a claim for negligent misrepresentation for failing to disclose to consumers that the humidifier would likely develop mineral scaling and buildup, which would lead to the failure of the unit. (*Id*. ¶¶ 206-12.) Plaintiffs

have also included an unjust enrichment claim. (*Id.* ¶¶ 213-18.)

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a motion to dismiss for failure to state a claim. First, the legal elements and factual

allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

## III.   DISCUSSION

### A.   Breach of Express Warranty

Because the Amended Class Action Complaint includes class members in New Jersey and Pennsylvania, the Court will address the laws of both states. To state a claim for breach of express warranty under New Jersey law, a plaintiff must allege that: (1) the defendant made an affirmation, promise or description about the product; (2) the affirmation, promise or description became part of the basis of the bargain for the product; and (3) the product ultimately did not conform to the affirmation, promise or description. *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011). A statement of mere puffery does not create an express warranty, and whether a particular statement creates an express warranty is usually a question of fact for the jury. *Id.*; *see also In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, Civ. A. No. 03-4558, 2008 WL 4126264, at *4 (D.N.J. Sept. 2, 2008).

In Pennsylvania, an express warranty is created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

13 Pa. Cons. Stat. §§ 2313(a)(1) & (2). To create an express warranty, the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them. *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1243 (Pa. Super. Ct. 2004). Similar to the law in New Jersey, puffery does not create a cause of action for breach of warranty in Pennsylvania. *See Sabol v. Ford Motor Co.*, Civ. A. No. 14-6654, 2015 WL 4378504, at *3 (E.D. Pa. July 16, 2015). Additionally, whether a statement creates an express warranty is an issue for the fact finder. *Oppenheimer v. York Int'l*, Civ. A. No. 4348, 2002 WL 31409949, at *3 (Ct. Com. Pl. Oct. 25, 2002) (citing *Babcock Poultry Farm, Inc. v. Shook*, 203 A. 2d 399, 401 (Pa. Super Ct. 1964)).

There is no dispute that an express warranty exists here. The breach is what is at issue. Honeywell argues that the mere failure of a humidifier is not a breach of the warranty. Rather, Honeywell contends that the warranty was only breached if the humidifier was deemed defective and Honeywell failed to provide the required remedy. (*See* Def. Honeywell International Inc's Mem. in Supp. of Its Mot. to Dismiss the Compl. [Def.'s Mem.] at 6.) Honeywell also argues that the express warranty limits Plaintiffs to a repair or replacement of a defective unit and does not allow them to recover for removal or reinstallation costs. (*Id*. at 5 ("The plain language of the warranty thus establishes an exclusive remedy of repair or replacement in the event of a product failure.").) According to Honeywell, "Plaintiffs can only state a breach of warranty cause of action by alleging either that Honeywell did not provide the specified remedy, or that the exclusive remedy otherwise failed of its essential purpose. Plaintiffs have alleged neither." (*Id*. at 6-7.)

At this early stage of the proceedings, the Court will not address the scope of the express warranty. The Court need not address this issue because Plaintiffs properly alleged that Honeywell refused to honor the remedies contained in the express warranty. These allegations are sufficient to state a breach of warranty claim. Burke alleges that when he contacted Honeywell about the defective unit, "Honeywell stated that it would provide no remedy unless an authorized technician first inspected the problem." (Am. Class Action Compl. ¶ 79.) It was only after a technician confirmed that the heating element had failed that Honeywell agreed to provide a new unit pursuant to the limited warranty. (*Id*. ¶ 80.) Similarly, Riley alleges that he was told on two occasions that Honeywell "would not honor the replacement warranty through the homeowner and that a contractor would have to conduct an inspection and install the replacement unit." (*Id*. ¶¶ 94-95.)

Whether or not Plaintiffs ultimately recover removal or reinstallation costs, Honeywell agreed that its humidifiers would be free from defects in the workmanship or materials for a period of five years from the date of purchase. Plaintiffs claim that the products did not conform to that warranty. Honeywell also agreed to either repair or replace a defective unit. According to the Amended Complaint, however, that promise was false. Instead, Plaintiffs were required to satisfy Honeywell—through an authorized technician and/or a contractor's inspection—that the humidifier actually was defective. Thus, Honeywell placed an additional burden upon Plaintiffs seeking to repair or replace their defective unit. Though this does not seem to be a big deal to Honeywell, the Court concludes that Honeywell's alleged refusal to repair or replace unless and until Plaintiffs satisfied new terms not spelled out in the warranty means that Plaintiffs have stated a claim for breach of express warranty.

Honeywell discusses at length that the homeowner's manual makes clear that the

9

TrueSTEAM must be installed and serviced by a trained, experienced technician. Therefore, according to Honeywell, "[a] homeowner purchasing a TrueSTEAM is put on ample notice that he or she is purchasing a product . . . that will require the involvement of a licensed professional and the payment of incidental costs associated with servicing the product." (Def.'s Mem. at 8-9.) There is nothing in the limited warranty provided by Honeywell, however, that demands an expert bless the homeowner's diagnosis that the humidifier is defective before Honeywell must repair or replace the defective unit. Whether additional requirements imposed by Honeywell constituted an additional part of the bargain can be decided at a different time. Plaintiffs have properly alleged that the product was not free from defects for five years from the date of purchase, and that Honeywell failed to repair/replace the defective unit as expressly warranted. Thus, Plaintiffs have stated a claim for breach of an express warranty.

Defendant also claims that Riley cannot bring a breach of warranty claim because his failure to have a licensed contractor install the unit means that the unit was not kept "under normal use and service" and therefore voided the warranty. (Warranty.) In a footnote dripping with disdain, Honeywell attacks Riley for his "unsanctioned purchase and installation" of the product, and "improper installation of his unit without a contractor." (Def.'s Mem. at 11 n.4.) Honeywell argues that Riley's action "not only voided the warranty, . . . but renders suspect and immaterial his complaint that the only contractors willing to work on his unit 'would charge at least $500 for labor alone, an amount exceeding the original costs of the Humidifier itself.'" (*Id*. (quoting Am. Class Action Compl. ¶ 96.)) The Court will leave it to Honeywell and its lawyers as to whether disparaging customers is the best tactic while proceeding with this litigation. Regardless, at the motion to dismiss stage, the Court will ignore whether Riley engaged in some type of nefarious underground humidifier

10

home improvement associated with the purchase and installation of his humidifier. As noted earlier, it is not for the Court to decide now whether Honeywell can add requirements not contained within the four corners of the express warranty it offered. Moreover, even assuming Honeywell can add requirements to its express warranty, the Court cannot determine the parameters of those requirements and whether Plaintiffs complied with them without the aid of discovery. The Court must therefore leave for another day whether Riley's actions voided the warranty because the issue is replete with factual questions, not appropriate for resolution on a motion to dismiss. The bottom line is that Riley has sufficiently alleged that he kept his humidifier under normal use and service. The Court cannot now assess the accuracy of this allegation.

Defendant also argues Plaintiffs cannot state a claim for breach of express warranty because the warranty does not extend to allegations of a design defect. (Def.'s Mem. at 12-13.) This argument is unpersuasive because it fails to take into account the breadth of Plaintiffs' allegations. Defendant itself notes that Plaintiffs have included claims that the units were defectively manufactured. (*Id.*) Defendant states that these claims of defective manufacturing are "conclusory" and that "it is clear that Plaintiffs' theory of the case is that the product's *design* was not adaptable to certain water conditions." (*Id.* at 12-13.) While the Court appreciates Honeywell's attempt to outline Plaintiffs' theory of the case, what matters here is that Honeywell concedes—as it must—that the Amended Class Action Complaint includes allegations of problems that are not design defects. (*See* Def.'s Mem. at 13.)

## B.      Breach of Implied Warranty of Merchantability

According to Plaintiffs, Honeywell also breached the implied warranty of merchantability because the humidifiers that Plaintiffs purchased tend to accumulate a buildup of mineral deposits

that leave the humidifiers unable "to perform their ordinary purpose of providing whole-home humidification with minimal maintenance." (Am. Class Action Compl. ¶ 144.)

In Pennsylvania, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 13 Pa. Cons. Stat. § 2314(a). Merchantable goods "are fit for the ordinary purpose for which such goods are used." *Id*. § 2314(b)(3). Pennsylvania law requires a showing that the product was defective to recover for the breach of the implied warranty of merchantability. *See Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).

The same implied warranty of merchantability and definition of merchantable applies in New Jersey. *See Arlandson*, 792 F. Supp. 2d at 705-06. In New Jersey, a party breaches the implied warranty of merchantability if the product at issue was defective or not fit for the ordinary use for which it was intended. *See id*. As in Pennsylvania, a breach of the implied warranty of merchantability requires a showing that the product does not function as intended, not that it fails to live up to its advertisements. *See Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 612-13 (D. N.J. 2013).

Plaintiffs bought Honeywell's product in an effort to increase the level of humidity in their residences, which presumably would make their homes more comfortable. They claim that the humidifiers they bought were defective, and thus failed to humidify their home. Plaintiffs' allegations present a textbook example of a claim for breach of the implied warranty of merchantability.

### C.    The New Jersey Consumer Fraud Act

Honeywell seeks to dismiss the New Jersey Consumer Fraud Act claim because "a simple

breach of warranty does not constitute a violation of the [Consumer Fraud Act]," and because Plaintiffs allegedly failed to plead any actionable misrepresentations or omissions. (Def.'s Mem. at 15.)

New Jersey's consumer protection law makes it unlawful for any person to "act, use or employ[] . . . any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J. Stat. Ann. § 56:8-2. To state a claim under the consumer protection law, a plaintiff must allege: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs' ascertainable loss. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007). A breach of warranty does not, standing alone, violate the law. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). Rather, New Jersey's consumer fraud act "requires that substantial aggravating circumstances be shown when the basis for the [consumer fraud law] claim is breach of warranty." *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997). To state a claim under the New Jersey Consumer Fraud Act, a plaintiff's allegations must be plead with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. *Rait v. Sears, Roebuck & Co.*, Civ. A. No. 08-2461, 2009 WL 250309, at *4 (D.N.J. Feb. 3, 2009).

This is a close question, but at this juncture, the Court concludes that Plaintiffs have alleged more than a breach of warranty claim. Rather, Plaintiffs have come forth with specific examples of repeated product failures, coupled with an allegation that Honeywell had actual and constructive notice that its humidifiers regularly failed. Moreover, a plausible reading of the Amended Class

13

Action Complaint is that Honeywell has knowingly replaced defective units with defective units. Such conduct could constitute an unconscionable commercial practice that extends beyond a breach of warranty and into the realm of consumer fraud.

### D.      The Pennsylvania Unfair Trade Practices and Consumer Protection Law

Honeywell agues that Plaintiffs' UTPCPL claim is barred by the economic loss doctrine and must be dismissed because Plaintiffs failed to allege any actionable misrepresentations or omissions. (Def.'s Mem. at 20-22.)

The UTPCPL prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. 73 Pa. Cons. Stat. § 201-3. Among those acts included in the definitions of "unfair methods of competition" and "unfair or deceptive acts or practices," are: (1) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; (2) "[r]epresenting that goods or services are of a particular standard, quality or grade . . . if they are of another;" and (3) "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Cons. Stat. §§ 201-2(4)(v), (vii), (xxi). To state a claim under the UTPCPL, a plaintiff must allege that: (1) he or she bought or leased goods or services primarily for a personal, family, or household purpose; (2) he or she suffered an ascertainable loss of money or property; and (3) the loss occurred as a result of the use by a person of a practice barred by the UTPCPL. *McLaughlin v. Bayer Corp.*, Civ. A. No. 14-7315, 2016 WL 1161578, at *18 (E.D. Pa. Mar. 22, 2016). The plaintiff must also allege justifiable reliance on the defendant's fraudulent or deceptive conduct. *Id*.

The economic loss doctrine prevents a plaintiff from bringing a negligence or strict liability

claim if the plaintiff did not suffer physical injury or damage to tangible property. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002). In other words, it bars plaintiffs from bringing tort claims for purely economic losses arising out a breach of contract. *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). In *Werwinski*, the Third Circuit concluded that the economic loss doctrine could be applied to bar UTPCPL claims. 286 F.3d at 681. That conclusion has recently been called into question by the Pennsylvania Superior Court's holding in *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013). In *Knight*, the court decided that the economic loss doctrine barred claims for negligence that resulted solely in economic damages unaccompanied by physical injury or property damage. *Id*. at 951-52. The doctrine did not, however, bar statutory claims brought under the UTPCPL. *Id*. at 952 ("The claims at issue in this case are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to Knight's UTPCPL claims.").  Despite the ruling from the Pennsylvania Superior Court, the issue is not settled in this District, as some courts continue to apply the economic loss doctrine applies to UTPCPL claims. *See McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) (concluding that the economic loss doctrine applied to UTPCPL subsequent to the ruling in *Werwinski*, despite Pennsylvania Superior Court ruling that the economic loss doctrine does not apply to UTPCPL claims); *but see Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 427-29 (E.D. Pa. 2015) ("*Werwinski* no longer has any vitality. . . .Therefore, in light of the [Pennsylvania Superior Court's] holding that the economic loss doctrine does not apply to UTPCPL claims, and the Pennsylvania Supreme Court's recognition that the economic loss doctrine is limited to negligence actions and does not bar a negligent misrepresentation claim, we conclude that the

15

doctrine does not bar Kantor's statutory-based cause of action for fraud and misrepresentation under the UTPCPL.).

While the economic loss doctrine generally does not apply to intentional torts, it can bar claims for intentional torts such as fraud, if the misrepresentation relates to the quality of the good sold. *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 684 (E.D. Pa. 2011).However, regardless of the current reach of the economic loss doctrine, it does not apply to bar claims if the fraud is "extraneous to the alleged breach of contract, not intervowen with the breach of contract." *McGuckin*, 118 F. Supp. 3d at 721.

Given the significant overlap between the allegations underlying the warranty claim and the allegations underlying the UTPCPL claim, the record may ultimately prove Honeywell correct on the applicability of the economic loss doctrine. At this stage of the proceedings, however, there are two reasons that the Court concludes that the economic loss does not bar the UTPCPL claim. First, Plaintiffs have alleged significant property damage, including "clogging of exterior drains, resulting in flooding, as well as corrosion of and/or mold and fungus growth within HVAC ducts, potentially compromising the structure of the HVAC duct system and/or affecting air quality." (Am. Class Action Compl. ¶¶ 78, 93.) Honeywell invites the Court to disregard Plaintiffs' allegations of property damages because the allegations are made upon information and belief. (Def.'s Mem. at 14-15.) The Court declines this invitation. Plaintiffs have alleged a plausible chain of events in which the interior of the units become caked with mineral deposits, which leads to "overheating, cracking of various components and blockages, and which can cause scalding water to overflow into the adjoining structure and personal property." (Am. Class Action Compl. ¶ 7.) Additionally, Plaintiffs claim that the defective units allowed steam to be blown into the HVAC duct, which "can lead to mold and

fungus growth that can adversely affect air quality, as well as cause corrosion of the duct work itself." (*Id*. ¶ 26.) Thus, the property damage alleged extended not only to the units themselves, but to the property of the unit's owner. Such allegations of damage to property other than the defective product, if proven, arguably take this case outside of the economic loss doctrine. *See 2-J Corp. v. Tice*, 126 F.3d 539, 542 (3d Cir. 1997) ("An essential aspect of the . . . economic loss doctrine is that while tort recovery is barred for damage a product causes to itself, such recovery is available for damage the failing product causes to 'other property.'"); *see also Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 449 (W.D. Pa. 2010). Second, Plaintiffs have plausibly alleged that Honeywell knowingly sold defective units and replaced defective units with other defective units. Such allegations do not relate to representations about the units and are far afield of any contractual breach. Instead, such conduct is a separate cause of action for fraud. *See Kantor*, 100 F. Supp. 3d at 429 (refusing to dismiss UTPCPL claim that was "separate and distinct" from contract claim). Thus, the economic loss doctrine may not apply due to fraud extraneous to any contractual breach.

Similarly, the Court will not dismiss the negligence and negligent misrepresentation claims at this time. Honeywell argues that Plaintiffs' claims are "simply that their product was defective and/or that Honeywell failed to abide by the terms of the warranty." (Def.'s Mem. at 23.) However, the Court has made clear that Plaintiffs' allegations extend far beyond a simple breach of warranty, and therefore rejects this narrow reading.

### E.     Unjust Enrichment

Honeywell contends that the unjust enrichment claim must be dismissed because Plaintiffs have asserted a claim governed by an express contract. (Def.'s Mem. at 24 ("Because Plaintiffs' allegations are the subject of the express warranty, the unjust enrichment claim must be dismissed.".)

Plaintiffs may proceed with their unjust enrichment claim as an alternative theory, although they will not be able to recover under both a breach of contract theory and an unjust enrichment theory. *See Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527-28 (E.D. Pa. 2012); *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, Civ. A. No. 08-1057, 2008 WL 5381227, at *9 (D.N.J. Dec. 17, 2008) ("An unjust enrichment claim may be sustained independently as an alternative theory of recovery.").

## IV.    CONCLUSION

Honeywell suggests a narrow reading of Plaintiffs' Amended Class Action Complaint that does not capture the scope of Plaintiffs' allegations. Therefore, the Court will deny Honeywell's motion to dismiss. An Order consistent with this Memorandum will be docketed separately.